CHAPMAN vs. HUNT and others.

COMPTON vs. HUNT and others.

Two mortgages, given to secure four notes, and to indemnify an endorser, were held to be paid and satisfied ; the payment being denied by the person holding them, on oath, and testified to by the assignee of the mortgagor, who paid them, and shown by the written surrender and receipt of the holder.

*Mr. G. M. Chapman, pro se.*

*Mr. D. Hayes,* for Mrs. Compton.

*Mr. Keasbey,* for defendants, I. L. Hunt, Fairchild, and Allen.

THE CHANCELLOR.

These suits are for different objects, and relate to different property. They are both foreclosure suits, and have been argued together, because the main contest in both, is on the same point ; that is, whether four notes of Isaac L. Hunt to Samuel J. Hunt, amounting to $5956.67, are paid. The first of the two chattel mortgages, which Chapman's suit seeks to foreclose, is for the payment of these notes, and also to indemnify S. J. Hunt against endorsements on Isaac's notes, then made. And the mortgage, claimed to be held by Chapman as defendant in Mrs. Compton's suit, on a farm at Rahway, is to secure the payment of these same notes, and to indemnify S. J. Hunt against endorsements then made, and endorsements to be made. Mrs. Compton's own mortgage for $7200 is not disputed ; the defendants, Fairchild and Allen, as was their duty, offered to pay it upon her assigning it to them ; but she preferred to hold it, and share the litigation, until the contest between the defendants as to the second mortgage was decided.

The chattel mortgage from I. L. Hunt to S. J. Hunt, which Chapman's bill seeks to foreclose, is dated September 27th, 1859. Its condition is as above stated; and the chattels mortgaged were the household furniture and wearing apparel of I. L. Hunt, and his stock, farming utensils, hay, grain, crops, horses, and carriages, then on his farm at Rahway. After the giving of this mortgage, and on the fourteenth day of November, 1859, Isaac L. Hunt, who was engaged in mercantile business in New York, made an assignment of all his property, except that situate in New Jersey, to Samuel J. Hunt, of New York, for the benefit of his creditors. This assignment was in trust, to pay, first, the debts mentioned in Schedule A, annexed, amounting to about $48,000. This schedule included the four notes secured by the two mortgages, and all notes, so far as appears by the evidence, that S. J. Hunt had endorsed for I. L. Hunt. This assignment was valid by the laws of New York, where the property assigned was situate. After the assignee had proceeded to sell part of the property assigned, and to make payments on the debts, an arrangement was made between him and G. M. Chapman, on the tenth day of March, 1860, by which he was to assign over the whole estate of Isaac L. Hunt assigned to him, unto Chapman; Chapman undertaking to purchase all the debts due from I. L. Hunt to S. J. Hunt, and pay for them by his ten promissory notes; to purchase, or procure releases from, all the claims in Schedules A and B, annexed to the assignment; and to produce releases, or agreements of compromise, from all other creditors of I. L. Hunt. This agreement was made by the consent of I. L. Hunt, who entered into an agreement of the same date, with Chapman, by which Chapman was to purchase or settle all the outstanding claims in Schedule A and B, and hold them at the price paid for them. I. L. Hunt himself was to settle all other claims against him. For this, I. L. Hunt agreed to require S. J. Hunt to transfer to Chapman all the property assigned to him; and also, the chattel mortgage on the furniture, stock, and farming utensils, and chattel mortgage on stock and

tools at I. L. Hunt's malleable iron factory, in Newark. And further, I. L. Hunt did · thereby "sell, assign, transfer, set over, and assign, to said Chapman, all the right, title, and interest, of him, the said Isaac, in the· property covered by said assignment, and all his residuary interest under the same, or in the same, or to the property covered thereby, and all his property, real and personal, whether in the state of New Jersey, or elsewhere," excepting the household furniture, farming utensils, stock, grain, and hay, on his farm at Rahway. This property was to be sold to pay, first, Chapman's advances for Isaac, and the sum of $31,865.18, acknowledged to be due to Chapman; and out of the balance, if any, secondly, to pay book accounts outstanding against the factory of Isaac, at Newark, to the amount of $3000; thirdly, to pay the notes given, or to be given by Isaac, in compromising his debts not in said schedules, and such debts as Isaac might not be able to compromise. And the surplus then remaining, should belong equally to Isaac and Chapman.

Samuel J. Hunt, on the twenty-second day of September, 1860, executed assignments to Chapman, of the chattel mortgage to him, and of the mortgage on the farm, but did not deliver to him the four notes for $5956.67, mentioned in them. And he testifies that nothing was due on this mortgage, or the farm mortgage, at the assignment, and that he told Chapman so.

The defendant, I. L. Hunt, contends that these notes are paid; first, by his assigning to S. J. Hunt sufficient property to pay them, and all the claims mentioned in Schedule A, which were to be paid first. It appears that the property assigned was sufficient for that purpose. But by the two agreements of March tenth, 1860, Chapman was to purchase these notes, and to hold them as his own, and he did give in payment of them his own ten notes, mentioned in Exhibit M 7, for defendants, which notes he afterwards paid. This actual purchase transferred the property in these four notes to Chapman, on the tenth of March, 1860, when S. J. Hunt

made an assignment, in writing, to him, of all his claims against I. L. Hunt; this is in Exhibit M 7.

But after this, S. J. Hunt transferred to Chapman the unsold balance of the goods assigned to him, amounting to $22,741.63, and the cash and bills receivable that he had taken for the part sold, amounting to about $25,000 more; and Chapman surrendered to him the claim he had assigned to Chapman on account of these notes and other claims against Isaac L. Hunt. S. J. Hunt testifies to this, and that it was in pursuance of their understanding. Chapman, in his testimony, denies it. But it is proved by documents offered in evidence, which not only show, but constitute the surrender. The genuineness of these documents is not disputed. One of them is Exhibit M 7, for defendants. It is written under the instrument by which the claims of S. J. Hunt against I. L. Hunt were transferred to Chapman, and this instrument constituted his title to those claims, including these notes. The surrender is in these words, "March twentieth, 1860. I hereby surrender the above claim to Samuel J. Hunt, assignee of Isaac L. Hunt, to be canceled as against his estate. G. M. Chapman." Again, Exhibit M 8, for defendants, of the same date, acknowledges the receipt of $15,461.16 from S. J. Hunt, as assignee, on account of claims of S. J. Hunt, preferred in the assignment in Schedule A, which claims he, Chapman, had purchased of S. J. Hunt on the tenth of that month, and had that day surrendered to the assignee in liquidation of that amount.

There can be no doubt about the effect of this payment. Chapman held this claim, including these four notes. S. J. Hunt was assignee, and had these funds; they were funds that he was bound to pay over on these and other claims in Schedule A. Chapman held the claim, accepted the payment, and surrendered the claim. These notes were understandingly and designedly paid off, and surrendered; there was no mistake or fraud in the matter; and these instruments, if not impeached, themselves discharge these notes.

Besides the payment of these notes, the condition of the

mortgage provides that S. J. Hunt shall be indemnified from all endorsements made for I. L. Hunt. It would be enough upon this point to say that the bill does not allege that I. L. Hunt omitted to pay any such notes, and that S. J. Hunt, or Chapman, had to pay them. But from the evidence, it appears that these notes were all paid, and paid by funds provided by Isaac, and that neither Samuel nor Chapman paid them out of their own funds, or have suffered any loss by reason of those endorsements. Most of these notes are included in the claim assigned and surrendered, in Exhibit M 7, for defendants. These were all paid by Isaac's money. The rest are mentioned in Exhibit C, No. 11, for complainants; these were not surrendered or assigned in Exhibit M 7. They were simply paid with money, the proceeds of the property assigned. This appears in the evidence of Samuel J. Hunt, in answers to questions twenty-six and twenty-seven, and is to be gathered as a legal inference from the fact, that the amount realized from the property assigned for the purpose of paying these claims, which were included in Schedule A, was sufficient to pay them. By Exhibit M 7, it appears that Hunt, on February twentieth, 1860, had received, as a dividend on his claims, $9762. The amount of the proceeds of the stock handed over to Chapman is stated by him, in his testimony, at $22,780.20; and the amount of cash received and paid over by S. J. Hunt, is stated by him, in answer to question seventeen, at $25,000. This last amount, the complainant, in his brief, I do not know on what authority, states as $23,000. But whichever it may be, these three sums are far more than sufficient to pay all the debts in Schedule A. And as Isaac has furnished the funds with which to pay them, they must be considered as paid with his money, and that nothing is due on the mortgage on account of these notes, not included in the surrender of March twentieth, 1860.

In the Chapman suit, a foreclosure is also prayed on another instrument, styled a chattel mortgage, made by Isaac L. Hunt to George M. Chapman, dated on the twenty-fifth

day of October, 1860, by which I. L. Hunt sells, assigns, transfers, and sets over, his interest in the firm of I. L. Hunt & Co., consisting of himself and Julia Ann Chapman ; and also all his interest in the grain, corn, hay, buckwheat, wheat, timber, cornstalks, fencing materials, and crops of every nature, on his farm at Rahway, and all his right to the chattels set forth in the schedule to the chattel mortgage, to S. J. Hunt ; also all his tools and chattels of the Newark Malleable Iron Factory, with full power to sell the same, and out of the proceeds to pay : first, to himself, any moneys that may be justly due to him ; second, to pay said Julia Ann Chapman any moneys that may be due to her ; third, to pay any moneys remaining, according to I. L. Hunt's written directions, *pro rata*, among his creditors.

This instrument, although not in form a mortgage, is such in effect ; and this court will give relief on it by ordering a sale. The complainant is entitled to have an account taken of what is due to him on debts owing to him by I. L. Hunt, at the date of this instrument, and of what was due to the complainant, Julia Ann Chapman, at that date ; and to have the personal property included in that assignment, sold for the payment of these moneys, in the order specified in it.

In the Compton suit, of course there must be a decree for the complainant. The mortgage on the farm to Samuel J. Hunt, assigned to Chapman, must be held to be satisfied, for the same reason that the chattel mortgage of the same date is herein above adjudged to be satisfied. The four notes, the payment of which it was made to secure, are paid and surrendered, and neither S. J. Hunt nor Compton has been called upon to pay the endorsed notes for which it provided an indemnity ; these notes were all actually paid out of other property of Isaac, assigned by him for that purpose. The agreement of March tenth, 1860, so far as it assigns or conveys the property of Isaac, is a preferential assignment, and was no doubt intended and made to keep off the creditors, who were not preferred ; and it must, therefore, for the reason stated by Chancellor Green, in *Fairchild and Allen* v.

*Chapman,* 1 *McCarter* 367, be held void, so far as it relates to property in New Jersey ; and, therefore, void for the purposes for which it is set up here. This view taken of the two mortgages to S. J. Hunt, makes it unnecessary to consider the question whether the assignments of them are not void for the interlineation in each, after execution and delivery. And the question whether the farm mortgage to S. J. Hunt can be set up by Chapman, cannot be determined in this suit, it having been assigned by him to his mother, Eunice, and not re-assigned to him by her executors.

An account must be taken of the amount due to the complainant on her mortgage, and to the defendants, Allen, Parker, and Fairchild, on their judgments, and the property sold to pay these encumbrances in their order ; and the surplus, if any, paid to Allen, as owner of the equity of redemption.